UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JAMES RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CRUZ, et al.,<br><br>Defendants. | Case No. 22-cv-07836-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 6, 20, 36 |

Before the Court are motions to dismiss filed by Defendant County of Santa Cruz, ECF No. 6; Defendants Jesus Mendoza and Aron Quolas, ECF No. 20; and Defendant Danita R. Carrillo-Zolck. The Court will grant the motions.

I.  **BACKGROUND**[1]

Pro se Plaintiff David James Rodriguez alleges that he was denied service by a postal clerk on December 11, 2020, for refusing to wear a face mask. Rodriguez asked to speak with a supervisor; while the clerk went to speak with the supervisor, Rodriguez left the post office to retrieve a phone from his car. When Rodriguez returned, Capitola Police officers Jesus Mendoza and Aron Quolas approached him. Video submitted by Rodriguez as an exhibit to his complaint captures the following exchange:

> [Mendoza:] "Sir, can you grab your stuff and we're gonna go outside?
> [Rodriguez:] Yeah. Why?
> [Mendoza:] Because they don't want your business here and it's private property.

---

[1] For the purposes of deciding this motion, the Court accepts as true all allegations set forth in Plaintiff's operative amended complaint, ECF No. 4, and attached exhibits. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

```
[Rodriguez:] She didn't say that.
[Mendoza:] The manager just told me.  So why don't you grab your
stuff and we'll go outside.
[Rodriguez:] We need to talk to the manager please.
[Mendoza:] No, we're gonna go outside.
[Rodriguez:]  Why are you asking me to leave this place?
[Mendoza:] Because they don't want your business.
[Rodriguez:] Okay.  So this is the first time that they said that.
[Mendoza:] Okay.
[Rodriguez:] Okay, so I gotta mail this document and I'll be happy
to leave.
[Mendoza:] You're not gonna do it here.  You have to go
somewhere else.
[Rodriguez:] What is the problem?
[Mendoza:] They don't want your business. It's private property.
[Rodriguez:] Who said that?
[Mendoza:] The manager did.
[Rodriguez:] Can I speak to the manager, please?
[Mendoza:] No.  So, you can go outside or you'll be arrested for
trespassing.
[Rodriguez:] Can I talk to the manager?
[Mendoza:] No.
[Rodriguez:] Where is the lady who left?
```

ECF No. 4 at 16, 00:19-00:58.  Rodriguez was subsequently arrested and transported to Santa Cruz County Jail, where he was held for approximately three hours.

Rodriguez brings this suit against the County of Santa Cruz, Officers Rodriguez and Quolas, and Postmaster Danita R. Carrillo-Zolck, alleging various constitutional violations and negligence.[2]  Defendants now move to dismiss.

## II.     JURISDICTION

The Court has jurisdiction over Rodriguez's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.

## III.    LEGAL STANDARD

"Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

---

[2] In opposition, Rodriguez also references the standard for evaluating excessive force claims and suggests he was discriminated against on the basis of religion in violation of Title II of the Civil Rights Act.  The amended complaint does not plead such claims.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When ruling on a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Pro se complaints must be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## IV.    DISCUSSION

### A.    County of Santa Cruz's Motion to Dismiss

The County moves to dismiss, arguing that Rodriguez fails to sufficiently plead a claim against it under 42 U.S.C. § 1983.

"[A]n individual may prevail in a [Section] 1983 action against 'municipalities, including counties . . .,' if the 'unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Lockett v. County of Los Angeles*, 977 F.3d 737, 740 (9th Cir. 2020) (quoting *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) (internal quote omitted)). "To establish municipal liability under *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)], [plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Id.* at 741. "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a

3

1  claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

2      Rodriguez alleges that the County's "failure to train officers and implement lawful
3  protocol" resulted in the denial of due process when he was wrongfully held at the county jail for
4  three hours following his unlawful arrest. ECF No. 4 at 9-10. While the Court may reasonably
5  infer that County officers were involved in booking and holding Rodriguez at the county jail,
6  Rodriguez pleads no facts to support his allegation that the County failed to train such officers, or
7  to establish that the need to train was obvious and that failure to do so made constitutional
8  violations likely, such that the failure to train could amount to deliberate indifference. Further,
9  Rodriguez pleads no facts to suggest that any failure to train was the moving force behind his
10 detention.

11     The County's motion to dismiss is granted. Because the Court cannot conclude that
12 Rodriguez's claim against the County could not possibly be cured by the allegation of additional
13 facts, the Court must grant leave to amend this claim. *Doe*, 58 F.3d at 497.

14     **B.**    **Mendoza and Quolas's Motion to Dismiss**

15 Mendoza and Quolas argue that all claims against them should be dismissed for
16 insufficient service and failure to state a claim.

17     **1.**    **Request for Judicial Notice**

18 Mendoza and Quolas request that the Court judicially notice "complete, unredacted and
19 unedited body-worn camera footage related to the incident." ECF No. 20-1 at 2. Plaintiff does
20 not object to the request for judicial notice.

21 Courts may judicially notice facts that are "not subject to reasonable dispute," meaning
22 they are "generally known" or "can be accurately and readily determined from sources whose
23 accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Courts may take judicial
24 notice of some public records, including the 'records and reports of administrative bodies.'"
25 *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003). "A court must also consider—and
26 identify—which fact or facts it is noticing . . . . Just because the document itself is susceptible to
27 judicial notice does not mean that every assertion of fact within that document is judicially
28 noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

4

1    "[A] court cannot take judicial notice of disputed facts contained in . . . public records." *Id.* And

2    the Ninth Circuit has expressed its concern that judicial notice procedures can be "exploit[ed] . . .

3    improperly to defeat what would otherwise constitute adequately stated claims at the pleading

4    stage." *Id.* at 998.

5           The Court is not persuaded that body-worn camera footage is a public record of the type

6    whose accuracy cannot reasonably be questioned, such that the Court may judicially notice

7    assertions of fact from the footage. Further, Mendoza and Quolas do not identify any particular

8    facts as the subject of their request for judicial notice. They merely argue that the footage "is a

9    clear, accurate depiction of the events and addresses Plaintiff's allegations regarding what

10   transpired." ECF No. 20-1 at 2. In their motion to dismiss, Mendoza and Quolas cite the footage

11   as evidence that they had probable cause to arrest Rodriguez, which Rodriguez disputes. The

12   Court will not judicially notice the footage for that purpose. *See, e.g.*, *Knickerbocker v. U.S. Dep't*

13   *of Interior*, No. 1:16-cv-01811-DAD-JLT, 2018 WL 836307, at *6 (E.D. Cal. Feb. 13, 2018)

14   (denying request for judicial notice of body-worn camera footage "to purportedly show that the

15   defendant rangers did not employ excessive force" because "[t]his obviously is disputed by

16   plaintiff, and is far beyond the usual purposes of judicial notice").

17          Mendoza and Quolas's request for judicial notice is denied.

18          **2.**    **Sufficiency of Service**

19          Federal courts cannot exercise jurisdiction over defendants without proper service of

20   process. *Omni Cap. Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987). "Once service is

21   challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."

22   *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Because Rodriguez does not address the

23   sufficiency of service in his opposition brief, the Court must evaluate whether service was

24   sufficient based on the proof of service alone.

25          The proof of service indicates that the summons and complaint for Mendoza and Quolas

26   were served on the Capitola City Clerk, "who is designated by law to accept service of process on

27   behalf of [the] Capitola Police Department." ECF No. 15 at 1-2. Under federal law, service may

28   be effectuated in any manner valid under state law or by delivery "to an agent authorized by

5

appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(1), (2)(C). "If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served," California law also permits substitute service by delivering the summons and complaint to a defendant's place of business and subsequently mailing a copy to the defendant at that address. Cal. Code Civ. P. § 415.20(b).

The proof of service does not establish that service was valid under Rule 4. The Court cannot assume that the Capitola City Clerk is "authorized by appointment or by law to receive service of process" on behalf of Mendoza and Quolas in their individual capacities.[3] *Cf. Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (holding that personal service, rather than service upon authorized agent of employer, was required to obtain jurisdiction over defendants in their individual capacities, as required to maintain *Bivens* claims against them). And, assuming for the sake of argument that delivery to the City Clerk constitutes delivery to Mendoza and Quolas's place of business, nothing before the Court establishes that personal service was attempted on either Defendant or that the documents were subsequently mailed to them, as required for valid service under California law.

Because Rodriguez has not established that he validly served Mendoza and Quolas in their individual capacities, Rodriguez's claims against them must be dismissed.

### 3. Failure to State a Claim

Even if Mendoza and Quolas had been properly served, the claims against them must still be dismissed for failure to state a claim upon which relief may be granted.

#### a. Unlawful Arrest

---

[3] While the amended complaint states that each officer is sued in both their individual and official capacities, Rodriguez alleges no facts relevant to establish liability on the part of the City of Capitola, the municipal entity which employs Mendoza and Quolas. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[T]o establish *personal* liability in a [Section] 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under [Section] 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." (emphasis in original) (internal citations omitted)). The Court therefore construes Rodriguez's amended complaint to plead claims against Mendoza and Quolas in their individual capacities.

1    "A claim for unlawful arrest is cognizable under [Section] 1983 as a violation of the Fourth

2    Amendment, provided the arrest was without probable cause or other justification." *Dubner v.*

3    *City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest

4    exists when officers have knowledge or reasonably trustworthy information sufficient to lead a

5    person of reasonable caution to believe that an offense has been or is being committed by the

6    person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

7    The allegations of the amended complaint and accompanying exhibits, taken as true, do not

8    plausibly suggest that Mendoza and Quolas lacked probable cause to arrest Rodriguez for

9    trespassing. Rodriguez's own allegations establish that he had been refused service by the postal

10   clerk; that Mendoza had been informed that Rodriguez had been asked to leave the post office; and

11   that Mendoza repeatedly informed Rodriguez that the post office did not want his business, that he

12   was on private property, and that he needed to leave. ECF No. 4 ¶¶ 2, 7, 28-30, 32, 35-36; *id.* at

13   16, 00:19-00:58. Rodriguez fails to allege facts suggesting that, under the totality of the

14   circumstances *known to the arresting officers*, a reasonably cautious person would not believe that

15   Rodriguez was trespassing. While Rodriguez alleges that he believed he was on "public federal

16   property" and that this was all a mere misunderstanding, *id.* ¶¶ 33, 40, Rodriguez's subjective

17   beliefs about the circumstances of his arrest are not relevant to the probable cause analysis.

18   Rodriguez's Fourth Amendment unlawful arrest claims against Mendoza and Quolas must

19   be dismissed. The Court cannot conclude that these claims could not be cured by the allegation of

20   additional facts establishing the absence of probable cause; accordingly, the Court will grant leave

21   to amend these claims.

22   **4.     Due Process Claims**

23   Rodriguez also alleges that his unlawful arrest violated his Fourteenth Amendment right to

24   substantive due process. ECF No. 4 ¶¶ 47-48. Mendoza and Quolas argue that, because unlawful

25   arrest claims are properly brought under the Fourth Amendment, Rodriguez cannot also bring such

26   claims under the Fourteenth Amendment.

27   "If a constitutional claim is covered by a specific constitutional provision, such as the

28   Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

7

1  specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520
2  U.S. 259, 272 n.7 (1997); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a
3  particular Amendment 'provides an explicit textual source of constitutional protection' against a
4  particular sort of government behavior, 'that Amendment, not the more generalized notion of
5  'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v.
6  Connor*, 490 U.S. 386, 395 (1989))).  The Fourth Amendment explicitly protects against unlawful
7  arrest, so Rodriguez cannot plead such claims under the Fourteenth Amendment.

Rodriguez's Fourteenth Amendment claims against Mendoza and Quolas are dismissed. Because these claims cannot be cured by the allegation of additional facts, the claims are dismissed without leave to amend.

### 5. Negligence Claims

Rodriguez alleges state law claims for negligence against Mendoza and Quolas.  However, Rodriguez has not pleaded compliance with California's Government Claims Act, which "requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part." *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." *State of California v. Superior Ct.*, 32 Cal. 4th 1234, 1243 (2004).

Rodriguez fails to allege facts demonstrating or excusing compliance with the claim presentation requirement of the Government Claims Act; accordingly, his negligence claims against Mendoza and Quolas must be dismissed.  Because the claims could be cured by the allegation of additional facts demonstrating or excusing compliance with the claim presentation requirement, the Court must grant leave to amend this claim.

### C. Carrillo-Zolck's Motion to Dismiss

Carrillo-Zolck moves to dismiss all claims against her for insufficient service and failure to state a claim on which relief may be granted.

8

### 1. Sufficiency of Service

As discussed above, this Court cannot exercise jurisdiction over a defendant without proper service, and, because Carrillo-Zolck challenges service, Rodriguez bears the burden of establishing that service complied with Rule 4. Rodriguez failed to file any opposition to Carrillo-Zolck's motion to dismiss, so the Court must evaluate whether service was sufficient based on the proof of service alone.

The proof of service states that the server left the summons with "David[,] a postal clerk[,] who said [Carrillo-Zolck] wasn't there[,] [d]idn't work there," and that David "tried to refuse service for [Carrillo-Zolck]," so the server "left [the summons] on the scale." ECF No. 15 at 3. The Court therefore assumes that the server attempted service by delivering a copy of the summons to the post office.

Rule 4 permits service by personally delivering the summons and complaint to the individual, leaving them at the individual's home with an adult who lives there, delivering them to an agent authorized by appointment or by law to receive service for the individual, or in any manner authorized by state law. Fed. R. Civ. P. 4(e)(1)-(2). California law, in turn, permits substitute service on an individual, "[i]f a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served," by "leaving a copy of the summons and complaint at the person's . . . usual place of business . . . in the presence of a . . . person apparently in charge of his or her usual . . . place of business" and by then mailing a copy to the individual at that address. Cal. Code Civ. Pro. § 415.20(b).

Service here was plainly insufficient under both federal and state law. There is no indication of any prior attempt at personally delivering the summons and complaint to Carrillo-Zolck, as required to permit substitute service under California law. *See Am. Express Centurion Bank v. Zara*, 199 Cal. App. 4th 363, 389 (2011) ("Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence.'"). Further, there is no indication that copies of the summons and complaint were later mailed to Carrillo-Zolck at that location.

Because Rodriguez has not established that he validly served Carrillo-Zolck, Rodriguez's

claims against her must be dismissed.

### 2. Failure to State a Claim

Even if Carrillo-Zolck had been properly served, the claims against her must still be dismissed for failure to state a claim upon which relief may be granted.

Rodriguez pleads claims for violation of his constitutional rights under 42 U.S.C. § 1983, which does not govern the conduct of federal employees acting under color of federal law.[4,5] *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995) ("[Section] 1983 provides no cause of action against federal agents acting under color of federal law.")  Carrillo-Zolck is a federal employee, and Rodriguez does not allege that she acted under color of *state* law, as required to maintain a Section 1983 claim against her.

Mindful that Rodriguez is pro se, the Court considers whether he may otherwise maintain an action for damages against a federal employee for alleged violation of his constitutional rights. The Supreme Court has authorized damages actions against federal officials for certain constitutional violations. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  To date, the Supreme Court has recognized three such implied causes of action for constitutional damages: first, in *Bivens* itself, for alleged violation of the Fourth Amendment during a narcotics arrest; second, in *Davis v. Passman*, 442 U.S. 228 (1979), for alleged sex discrimination in federal employment in violation of the Fifth Amendment; and third, in *Carlson v. Green*, 446 U.S. 14 (1980), for alleged inadequate care of an incarcerated

---

[4] Rodriguez pleads a claim for violation of his Fourteenth Amendment rights against Carrillo-Zolck. ECF No. 4 ¶ 50 (alleging he was "deprived of equal protections of the law pursuant to 14[th] Amendment to the US Constitution").  The Fourteenth Amendment does not apply to the federal government.  Mindful that Rodriguez is pro se, the Court construes this as a claim for violation of his Fifth Amendment right to equal protection.

[5] In the text of Count 6, Rodriguez also alleges he "was denied reasonable accommodation pursuant to Title [VII] of the Civil Rights Act of 1964."  ECF No. 4 ¶ 50.  Title VII provides, in relevant part, that "[i]t shall be an unlawful *employment* practice for an *employer* . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  "[T]here must be some connection with an employment relationship for Title VII protections to apply."  *Assoc. of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 580 (9th Cir. 2000).  Rodriguez does not allege any employment relationship.  Accordingly, to the extent Rodriguez seeks to plead a claim for violation of Title VII, he cannot do so.

1 person under the Eighth Amendment.

2 "[R]ecognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*
3 *v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).
4 "First, we ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]
5 different' from the three cases in which the Court has implied a damages action." *Id.* (quoting
6 *Ziglar*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is
7 unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less
8 equipped than Congress to 'weigh the costs and benefits of allowing a damages action to
9 proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136).

10 Rodriguez's Fifth Amendment equal protection claim against Carrillo-Zolck arises in a
11 new context. "If the case is different in a meaningful way from previous *Bivens* cases decided by
12 [the Supreme] Court, then the context is new." *Ziglar*, 582 U.S. at 139. A case may differ in a
13 meaningful way where it "involves a 'new category of defendants.'" *Egbert*, 142 S. Ct. at 1803
14 (quoting *Corr. Servs. Corp. v. Maleski*, 534 U.S. 61, 68 (2001)). While the Supreme Court has
15 recognized an implied cause of action for sex discrimination in violation of the Fifth Amendment
16 in the context of federal employment, *Davis*, 442 U.S. at 228, it has not recognized such a cause of
17 action for equal protection violations outside of the employment context. To recognize an implied
18 cause of action for equal protection claims against postmasters for denial of service to individuals
19 who refuse to wear masks would constitute a new *Bivens* context. *See Quinonez v. United States*,
20 --- F. Supp. 3d ----, 2023 WL 3607964, at *13 (N.D. Cal. Apr. 3, 2023) ("[P]laintiffs' claims
21 involve a new category of defendants—postal officials—which constitutes a new context on its
22 own.").

23 Further, special factors preclude the extension of *Bivens* to this context. "[A] court may
24 not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to
25 provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 582 U.S.
26 at 137). "'Alternative remedial structures' can take many forms, including administrative,
27 statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir.
28 2018). Congress has created an alternative remedial structure for misconduct by postal employees

by creating "[t]he Office of Inspector General for the United States Postal Service, 'an independent oversight agency, separate from the U.S. Postal Service [and] U.S. Postal Inspection Service' [which] investigates matters including . . . employee misconduct." *Quinonez*, 2023 WL 3607964, at *14 (second alteration in original). "So long as Congress . . . has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807. Because Congress has created an alternative remedial structure for reports of employee misconduct, the Court cannot extend *Bivens* to this context. *See Quinonez*, 2023 WL 3607964, at *14.

Even assuming such a cause of action existed, however, Rodriguez does not allege any conduct by Carrillo-Zolck at all, let alone conduct that could constitute an equal protection violation. "[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others[,] [because] '[t]he purpose of *Bivens* is to deter the *officer*.'" *Ziglar*, 582 U.S. at 140 (emphasis in original) (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rodriguez alleges only that Carrillo-Zolck "is the Postmaster and is ultimately responsible for protecting everyone to be afforded equal protection[] under the law, whoever enters her Post Office," that "[a]s a direct result of [Carrillo-Zolck's] official capacity, [Rodriguez] was arrested for not wearing a mask in the post office," and that Carrillo-Zolck "is responsible for employee's (Ciara Doe) actions under *respondeat superior* doctrine." ECF No. 4 ¶¶ 50, 53. Rodriguez cannot state a *Bivens* claim against Carrillo-Zolck on the basis of *respondeat superior*, and Rodriguez does not allege that Carrillo-Zolck was in any way involved in the December 11, 2020, interaction at issue here.

Carrillo-Zolck's motion to dismiss is granted. Because amendment of these claims would be futile, Rodriguez's claims against Carrillo-Zolck are dismissed without leave to amend.

## CONCLUSION

The motions to dismiss are granted. Rodriguez's claim against the County of Santa Cruz (Count 5); Fourteenth Amendment claims for unlawful arrest against Mendoza and Quolas

1  (Counts 3 and 4); and claims against Carrillo-Zolck (Counts 6 and 9) are dismissed without leave
2  to amend.
3   Rodriguez's Fourth Amendment unlawful arrest claims (Counts 1 and 2) and negligence
4  claims (Counts 7 and 8) against Mendoza and Quolas are dismissed with leave to amend.  Leave
5  to amend is granted solely to cure the deficiencies in Counts 1, 2, 7, and 8, as identified in this
6  order.
7   Any amended complaint shall be filed within 28 days of this order.  Failure to meet the 28-
8  day deadline to file an amended complaint or failure to cure the deficiencies identified in this order
9  will result in dismissal with prejudice of Rodriguez's claims.
10  The case management conference scheduled for July 25, 2023 is continued to October 31,
11 2023 at 2:00 p.m.  Updated case management statements are due October 24, 2023.
12  **IT IS SO ORDERED.**
13 Dated:  July 20, 2023

_____
JON S. TIGAR
United States District Judge

13